Commission, Cfoodin, Subasic, Appley, by Brian Thomas. Mr. Needham, you may proceed. Thank you. Good morning, Your Honors.      Thank you. Good morning, Your Honors. May it please the Court, my name is Joe Needham. I represent the appellant, Swiss Port, prosecuting this appeal. Our appeal involves three issues. Whether the appellee can litigate at a future trial, a TTD issue not litigated at the initial trial. Whether the manifest weight of the evidence supports the award of TTD on and after February 27th of 2020. And whether the manifest weight of the evidence supports the unspecified pain management condition. The answer to each is no. The Commission's errors require reversal of the TTD award. It requires reversal of the medical benefits award. And requires reversal of their determination that the appellee can litigate the issue of TTD prior to February 27th, 2020. At trial, regarding the first issue. At trial, the appellee completed a request for hearing stating his TTD entitlement began February 27th of 2020. The Commission awarded TTD beginning February 27th, 2020. But decided the appellee may litigate at a later hearing the issue of TTD entitlement prior to February 27th of 2020. They ruled that that was the case because the issue was not raised at the initial hearing and because the request for hearing form alleging TTD entitlement was not a stipulation to which the appellee is bound. There are two errors in this finding. The appellee's request for hearing form is his stipulation and he's bound to it. And the appellee may not litigate at a later hearing an issue he didn't raise at the initial hearing. Section 903040 of the Commission rules specifically states the request for hearing form is the stipulation of the parties on the issues in dispute. Walker versus the Industrial Commission holds those stipulations are binding on the parties. The rules in case law both acknowledge these are binding stipulations. The appellee cannot litigate at a future trial issues to which he stipulated at a prior trial because issue preclusion applies. The same result applies if the request for hearing is not a stipulation, which we maintain it is. If you decide the issue of TTD prior to February 27, 2020 remains unlitigated as the Commission ruled, then you must find the appellee waived the issue when he failed to litigate it at trial in April of 2021. Failure to litigate the issue of TTD results in its waiver. We cite the cases in our brief, Crop Forge, Thomas versus the Industrial Commission, and Taylor. I should mention my brief. I've listed Taylor Coal Company as Taylor, not Taylor Coal Company. It's a mistake. The numerical citation is accurate, but by Taylor, over a century of case law establishes that you can't litigate at a later trial an issue that you refused or failed to litigate at an initial trial. As a stipulation, appellee cannot pursue the issue at a subsequent hearing due to issue preclusion and Walker versus the Industrial Commission, and if it's an unlitigated issue, appellee cannot pursue the issue at a subsequent hearing under Taylor Coal, Thomas, and Crop Forge. This is an unambiguous legal issue, and the Circuit Court's application of R.D. Masonry to circumvent the case law authorities is a painful stretch. R.D. Masonry involves a post-trial period of TTD, and the question whether the claimant was required to submit to a Section 12 exam to maintain his post-trial TTD entitlement. Nothing about R.D. Masonry addresses a prior-to-trial period of TTD, which the claimant did not pursue at trial. The case is completely inapplicable to our dispute. We cite in our brief the language of R.D. Masonry specifying how each trial reaches a determination of temporary total disability up to the date of that hearing. It specifies that the surviving claim for TTD is that which accrues after the initial trial, and we outline the Circuit Court's misapplication of R.D. Masonry to our case in our brief. R.D. Masonry does nothing to cure the error in the Commission's decision that an appellee can pursue at a later trial that TTD issue, having failed to pursue it at trial April 29. Council, this is a good time for me to interject a question, and that is, the Commission itself raised the petitioner's right to claim TTD, did it not? The Commission Well, the arbitrator actually awarded the TTD. Then the Commission reversed that award and held that the issue has been preserved, which is contrary to law. How do you deal with the arbitrator, Commissioner introducing the issue, thus making a decision that it's an issue of the case? Technically the issue would have been introduced because we, as the defense at the time, claimed an overpayment of TTD. The entire period of TTD is an issue, including that which he didn't claim, because it's a part of our claim to credit. But the Commission's introduction is contrary to the standing case law, and contrary to the Commission rules, if the purpose of introducing it is to maintain it, preserve it for a later hearing. What they did is they actually ruled on, both at the Commission level and at the arbitration level, they ruled on the issue of TTD, first by awarding it prior to February 27th of 2020, then by reversing that portion of the award, but maintaining the post-trial, I'm sorry, the prior to February 27th of 2020. Why did they reverse the TTD award? Because Walker versus the Industrial Commission, Taylor, Cole, Thomas, Cropford... What was the reasoning of the Commission? Well, they claimed that the issue was never litigated. How can it suggest it was never litigated if the arbitrator awarded TTD? Well, we don't... Your Honor, we don't agree, so that we would note that as another one of the errors. We don't agree with what? We don't agree that... I'm sorry, what was your initial question? You suggested if the arbitrator awarded TTD, how is it that can it be suggested that it was never litigated? Well, we are not suggesting that it was never litigated. Therefore... What was the Commission's reasoning for reversing the arbitrator's TTD award? I don't know that they specified the reason. And if they did, I'm not recalling it, Your Honor. Okay. May I ask, as long as you've been interrupted, Counsel, was TTD paid from the date of the accident to Feb 26, 2020? Yes, Your Honor. Was it in dispute? I mean, how was that in dispute? We disputed it at trial, Your Honor, as payments not owed. There is an off-the-record discussion which, frankly, we would be better served if it was on the record. But the parties discussed this issue off-the-record and then the arbitrator alluded to it briefly when she was addressing the stipulations. But that R.D. Masonry is... Getting back to the Commission's interjection... I'm sorry, the Circuit Court's interjection of supposed support for the Commission under R.D. Masonry, that R.D. Masonry is the best support the Commission's... that the Circuit Court can find for the Commission's decision highlights the Commission's error. This is more than a century of authorities that define the rule that the appellee cannot pursue at a later trial, a claim he didn't pursue at the initial hearing, if that's what you are to rule. Including TTD prior to February 27th of 2020, either because he waived the issue by failing to raise it at trial, or because he stipulated to it at trial. Respectfully, we ask that you reverse the decision finding appellee may litigate at a TTD prior to February 27th of 2020 as error. The second and third issues that we have appealed excuse me are the award of TTD after February 26th of 2020 and additional treatment for an unidentified pain management condition. They're essentially the same issue in that they are reached through the same set of errors, so I'd like to address them together. Both decisions rely on an unqualified physician whose medical opinion is contradicted by his own evidence and whose testimony admits his lack of qualification. Both decisions incorrectly find the appellant's medical expert, Dr. Holmes, agrees the appellee requires pain management treatment and restriction. Dr. Holmes specifically stated the opposite. Both decisions refuse to consider the only qualified pain management expert and evidence in the record, which is Dr. Belmonte's pain management examination finding and opinions. The reason why they refuse to consider also or fail to consider is error, and their reasoning is that because other doctors disagree with Dr. Belmonte on issues other than his pain management findings. Well, counsel, it's more than that. They found him less credible. Yeah, but what is the reason why they found him less credible? They never address his pain management diagnoses, opinions, or findings. They say, Belmonte is proffering pain management evidence, pain management opinions, pain management findings, and the commission says, well, we disagree with your non-pain management opinions. To discount the pain management opinions because you disagree with the non-pain management findings or opinions is to, frankly, ignore the actual evidence that the doctor is there to provide, the pain management evidence. That's true. All that's true, and it's a good argument. Is it improper to weigh the credibility that way, though, if they find the evidence on another issue other than pain management is untrustworthy or lacking? My question and response would be, what is that other evidence? I haven't gotten there yet, but I'm about to. The other evidence actually contradicts the claim. It doesn't support the claim. Boiled down, the commission's decision rests on the lone speculation of a rather green orthopedic surgeon contradicted even by his own treatment evidence. The commission's decision awarding the TTD and the treatment for pain management condition, it's clear error which this good court must reverse, addressing the main piece of evidence that they refer, or the main portion of evidence that the commission relies upon is Dr. Saper, the treating doctor. Now, his is the only support in the record for the appellee having a complex regional pain syndrome or other identified pain syndrome. Dr. Holmes doesn't support the commission's decision, and I'll address that shortly, but I first want to address what Your Honor just touched upon, and that is that an orthopedic physician is not qualified as an expert on the issue of pain management. It is de facto error to rely on an orthopedic physician in contradiction to actual qualified expert pain management evidence in the record, particularly where the pain management evidence is unimpeached and supported by other evidence in the record. Counsel, I think, you know, this might be the wrong term. It seems to me that Dr. Saper sort of bootstrapped his diagnosis and understanding of the case on this Murtaza's beginning of CRPS. The problem with that, Your Honor, is Dr. Murtaza sees the appellee one time, and it's two years after Dr. Saper has been insisting that petitioner has complex regional pain syndrome, despite his own documented findings to the contrary. I get the problem with that. I'm just pointing out that I think that's where sort of the opinion changed of Saper. I don't know that that's the case, Your Honor. I didn't read it that way. In fact, what I have indicated in my brief, whether it's to this quarter or one of the others, is that Dr. Saper was using Dr. Vo as his pain management specialist. I'll get to that in a little bit better detail as well. It was only after he claims Dr. Vo left the practice. Now, we know that Dr. Vo is still practicing. If this claimant wanted to continue to see Dr. Vo, he would. My contention is that after two years of being told no by Dr. Vo, he stopped using Dr. Vo and just went to another option. But on ten separate instances, Dr. Saper testifies he's not a pain management doctor, he isn't qualified to diagnose pain syndrome, or even to properly document its symptoms, and he cannot dispute Dr. Belmonte's pain management evidence. I'll give you those ten record citations if you like. Also, and by the way, those ten record citations, I believe, are in the brief. Every one of Dr. Saper's treatment records disproves the existence of a pain syndrome. And I contend that's why my opponent didn't enter those records into evidence. Okay. Your time is up, Mr. Needham. That was 15 minutes? The red light is on. That is horrible. My apologies, Your Honor. I didn't get to any of my additional argument. Well, you'll have time in reply. Thank you. Mr. Thomas, you may respond. Thank you. Good morning, Justices. My name is Brian Thomas. I represent Sipud and Sibosik. We can start with whether or not Mr. Sibosik is able to litigate a time period not sought in the initial 19B request for hearing. And in doing that, I suggest that we start with what the Swiss Court wants this Court to do. And Swiss Court wants Mr. Sibosik to write it a check for $61,088. They argue that they should get a credit for time that it paid TTD between the dates of October 12, 2016 and February 27, 2020. And that Mr. Sibosik should be forever barred. So they get a credit for that, but then Mr. Sibosik should be forever barred from being able to assert that TTD should have been paid during that time period. And then that ultimately creates a $61,000 windfall to Swiss Court, which is two times the amount of TTD that was really sought, because 61 weeks of TTD equals about $32,000. Note, at least when I was at trial and reading all the briefs, I didn't see that the appellant was arguing that TTD was not owed between October 12, 2016 and February 27, 2020. All three fact finders have made similar findings in this case. The commissioners and the Circuit Court both found that because the time period of October 12, 2016 to February 27, 2020 was not claimed at trial, it was not waived and it can be brought in a subsequent 19B petition. Page 2 of Swiss Court's reply brief lists the number of cases and counsels gone through them and then states, quote, all deny the defendant the opportunity to pursue a period of TTD prior to the April 29 to 2021 19B trial. End quote. Taylor, which the appellant refers to in terms of 100 years of precedent, says nothing about 19B. It is literally a jurisdictional issue. Right? Stevens doesn't talk about 19B. Manis doesn't talk about 19B. I will, however, look at Gallianetti because I think that that actually does support Mr. Subosik's position here. Now, Gallianetti looks at Section 8 of the Act as opposed to Section 19 but on page 30 of Gallianetti, and this is Head Note 15, it notes, and I quote, the employer or insurance company shall receive credit for each payment only to the extent of compensation that would be or would have been available during the period covered by such payment. End quote. What does that mean? You get a credit for the same time period that's been put at issue. And then Gallianetti goes further and says why. It says, quote, we noted that the employee should not receive a windfall at the employer's expense. End quote. Right? And that is exactly what the appellant here is doing by applying a time period that wasn't at issue as a credit to the time period that was and then saying that the petitioner is barred from ever bringing that first time period back at issue. Right? Gallianetti itself says that you can get that credit, right, but it needs to be for the appropriate time period. And then Gallianetti also says that no side should receive a windfall. Right? And that's what the circuit court ultimately looked at when it brought up R.D. Masery and applied it in Section 19 of the Act. Right? First, let's look at R.D. Masery saying, quote, the principles to be applied in construing a statute are well settled. In doing so, we presume that the legislature did not intend absurdity, inconvenience, or injustice. End quote. And that is exactly, unfortunately, what the appellate seeks here. Not only a windfall in $61,000 that goes back to them, but then injustice. They haven't provided a case that says petitioner cannot bring a subsequent 19B petition for a past time period. As far as I'm concerned, no case exists. I've looked for it. 19B is very specific. It says bringing a petition shall in no instance be a bar to a further hearing and determination of a further amount of temporary total compensation. Why is that? 19B is an emergency proceeding. It's an emergency petition where the petitioner is able to say, look, I haven't been paid TTD from this time period to this time period. Let's figure out whether or not that should be held. And that's why 19B allows for separate and distinct time periods to be raised at future dates. And nowhere within the actual statute or the case law interpreting the statute does it say that we can't litigate a past time period. I like Thomas v. Industrial Commission here because it does say that petitioner ultimately sets the parameters of a 19B hearing. And that the appellant, or actually in Thomas it says that the commission cannot unilaterally expand those parameters. That is ultimately what the appellant is doing here. By seeking a time period that was not at issue as a credit, and that time period being the October 12, 2016 through February 27, 2020 time period that was not at issue, it provides an absurd result. So I think ultimately Swiss courts should not get the windfall that it seeks. There's no law on point that says appellee is barred from seeking TTD benefits for a different time period, past or future. And that's why I think the commissioners and the circuit court got it right. If anything, we can use Galli and Eddy for the proposition that the time periods need to match up. They can get a credit, but it needs to be for the same time period alleged. Ultimately, I think that the findings of both the commissioners and the circuit court on this issue should be affirmed. Now, with respect to pain management, I think the record is very clear. It's clearly apparent that petitioner suffered a pain related to the workplace incident, and that it required pain management. Dr. Saper's opinion alone is a sufficient basis that Mr. Subasik needs pain management due to the injury sustained in the workplace incident. I could argue that the IMEs are biased and therefore we can discount what they say with respect to this with respect to this issue. But I don't even need to say that because their main IME, Dr. Holmes, agrees. Dr. Holmes, in his two reports, says that he has current pain and relates that pain to the workplace accident. He says it in reports plural and he says it in his deposition. Dr. Holmes also then several times endorses pain management. He says that Mr. Subasik needs pain management for chronic pain that he calls a neurologic condition. He specifically stated in his deposition, which is on page 377 of the record, that he agreed with Dr. Saper and the need for pain management. He said it multiple times. Now, he did say that there was a subtlety to his answer. But then when you read on in the deposition, and I'm not saying 10 pages later, this is like the next page, he says the subtle distinction that Dr. Holmes makes is that he doesn't think Mr. Subasik needs pain management to treat CRPS or RSD. He thinks that he needs pain management to treat a neurologic condition, which is either relates directly to the injury or the interventions that were taken to defeat that injury. That's what Dr. Holmes states. And then he even notes that he treats people with both orthopedic issues and neurologic issues. He says this, and this is on pages 379 of the record through 380. He says, we treat both of those. As a physician, I have to look at other data points that are related to his neurologic condition as well. What does that mean? What Dr. Holmes is stating here is that, look, just because someone starts out with an orthopedic condition, it changes into a neurologic condition. Not quite certain. Dr. Holmes said, I'm not certain if it's because of the injury or the interventions, but I do know that this neurologic condition, this chronic neurologic condition, Dr. Holmes' words, not mine, is relates back to the initial injury. And even Dr. Belmonte, right, he, now again, this is an IME, right, so we can just discount the IME because he's being paid by the employer, right, but even the IME says Mr. Subosik has significant tenderness, spasm, pain, and inflammation. All of this is current. All of this relates back to the accident. He disagrees with the diagnoses. He calls these Achilles tendonitis, plantar fasciitis, and calf strain, but he does say that they all relate back to the accident. And, look, he says he doesn't need pain management, but he does need a rigorous home exercise program. So I think, you know, put it like this. Had the commission said that he didn't need pain management, I would say that the manifest weight of the evidence suggests that he does, right, but that's not what the commission said. And that's not what the circuit court said. The circuit court both found all the evidence showed that Mr. Subosik's current complaints were related to this workplace injury and that pain management was necessary and required to treat these current complaints. Now, with respect to TTD, the commission and the circuit court got both of this right. Can I ask a question about the TTD? Of course. You filed for the 19B and asked for TTD from February 27th of whatever year, February 27th 2020, because they cut off TTD in February of 2020. Is that correct? Correct. What in heaven's name would be the purpose of filing a 19B for TTD that had already been paid? I don't know that there is a purpose to do that, to be quite honest. There could be a purpose on the part of the TTD period to raise the issue that you weren't entitled to TTD during that period of time, I suppose. But I can't see any reason why a petitioner would file for TTD for a period when they'd received TTD. It occurs to me in a 19B petition. It occurs to me in a 19B petition, the only thing that's an issue for the petitioner is compensation that was owed and has not been paid. Look, if this was a request for hearing, and I agree with you, Justice, if this was a request for hearing on all issues, then we could talk about that. But on a 19B, when we're talking about TTD and then ultimately future medical treatment, once that was terminated in February 27th of 2020, that's when it became an issue and that's when it was brought to the arbitrator as an emergency petition. And that's what 19B stands for. And in terms of whether or not TTD should have been awarded, meaning should have or was petitioner given an opportunity to go back to work, because that's something that the respondent that the employer raises, let's look at the position that the petitioner was in in February 2020. That's post February 27, 2020 issue. I'm concerned about the issue of pre-February 27, 2020, if that was even an issue that should have been brought before the arbitrator in the 19B in the first instance. I agree with you. I don't think that, not in a 19B, it probably should not have been. What's at issue, and we can look at Thomas on this, what's at issue is that date starting February 27 through the time of the trial, which is April 29, 2021. And I think that the fact that the petitioner, I'm sorry, that the appellant didn't do anything to bring this gentleman back to work after these IMEs. Their own IME says that Mr. Subasik either can't work or should be on sedentary duty. So when the benefits stopped, we have on page 230 of the record, it says light duty with no lifting at 5 pounds more than 10 hours a week. There is no evidence in the record that Swiss Court did anything to bring Mr. Subasik back at any restriction level. We hear a whole lot about a 40 pound restriction level, but there's no evidence in the record that that's actually his restriction level, not until Dr. Saper testifies, which isn't until end of August of 2020. So back in February of 2020, when the actual IME was stopped and when benefits were terminated. So not only was TTD terminated, but also the right to future treatment. There was no intention from the appellant to bring Mr. Subasik back. And that's the evidence that they didn't bring him back is important because it rebuts the claim that they say that there was work available to him or for him. Swiss Court didn't even talk about Mr. Subasik until March of 2021 in preparation for the trial. So ultimately, I think the manifest way to the evidence supports the finding of the circuit court and the commissioners. Thank you, Justices. Any questions from the court? Further questions? No? Okay. Thank you, Counsel. Thank you. Counsel Needham, you may reply. Your audio is off. Thank you. Regarding the period of TTD prior to trial that was inquired about, it's a matter of what the request for hearing form requires. The request for hearing form requires the claimant to allege all issues of entitlement, including the 19B. Wait a minute. A 19B proceeding is for an emergency hearing for benefits that are not being paid or have not been paid. In this particular case, what in heaven's name would be the purpose for the petitioner to raise as an issue in 19B his entitlement to temporary total disability that he already received? He's got a 19B and says, you cut me off on February 27. I'm entitled to TTD post February 27 to the day of this hearing. It occurs to me that what you're arguing is that you're entitled to raise the question of the propriety of disability paid by you in a 19B proceeding. And that doesn't seem to me to be the purpose of a 19B proceeding. It says that the employee may petition at any time for an expedited hearing by the arbitrator on the issue of whether or not he or she is entitled to receive payment of services and compensation. Yeah, go ahead. Trial isn't limited to the issues that the petitioner produces. Respondent produced the issue. Counsel, there's no question. They only placed an issue the period of time for which you had not paid TTD. Respectfully, we disagree. We're not arguing the issue of the credit other than to address your question, sir. As respondent at trial, the appellant claimed we didn't owe the TTD that was paid. We claimed a credit for the TTD that was paid. There's no basis to claim a credit for the TTD that hasn't been paid. The entire issue of appellant's credit is based on the fact that we indicated to the court we didn't owe the TTD benefits that were paid. Every respondent before the commission pays benefits under duress. We're forced to pay our benefits until we've mounted our defense to sever those benefits, but we're not precluded from going back and recouping them. That's what the commission got right. The issue of the credit is not before your eyes. Counsel, I don't dispute you have every right in the world to go back and recoup them. My question is, is it a proper forum to recoup them in a 19B proceeding? It's the only opportunity for us to recoup them, Judge. This case is going to come on for trial on all issues. At that particular point in time when it comes on trial for all issues, you have a forum to recoup. I paid him TTD from such-and-such a date to such-and-such a date. He wasn't entitled to it. Therefore, I'm entitled to a credit against any other amounts that are ordered to him for that period of time he received compensation for me he didn't get. So why don't you have a forum? There is a forum, Judge. There's one forum. It's the request for hearing forum. Wait a minute. Which request for hearing forum? Is it the 19B request for hearing forum? That's for temporary. That's for benefits that have not been paid. It's not to determine whether the benefits that have been paid were proper. Respondent, appellate as respondent before the court raised the issue of the TTD that was paid but not owed. We're talking about a credit that's not actually before the court. My question is a basic question. We know you raised it. The question is, was it properly raised in a 19B proceeding? Or should it have been reserved for the hearing on the final hearing on permanency in all benefits to which he's owed? No, Your Honor. It shouldn't have been. It was brought timely. It was brought timely because the dispute at the time was what TTD is owed. We were maintaining no TTD is owed, including that which was paid. I will remind Your Honors, there isn't any treatment record. There are no records of restriction for the appellee in the record. Not even, not before the discussion. Counselor, I'm not talking about whether he was entitled to TTD post-February 27. My questions have nothing to do with that. My questions have to do with, is it the proper form for you to raise the question of whether TTD that has actually been paid was properly paid? Or is that issue of yours to be reserved and handled when this case comes up for final determination of all benefits owed? There's no authority that says that that is the case, Your Honor. And the authority cited by the appellant in our brief are that those issues that are ripe must be presented for litigation, including respondent's credit for a TTD period that was paid but not paid. What we're arguing, Your Honor, is that by not presenting it, it's waived. And what I'm saying is if you would turn it on its head and tell me I should have waited to present it, then I would have waived the argument. The issue of TTD prior to February 27 of 2020 is a matter of stipulation in the request for hearing, which must... Let me understand something. Your theory is that every time a petitioner files a 19B petition, he not only has to establish that he's entitled to future medical that has not been paid or future TTD that's not been paid, he also has to ask for a ruling on anything that was paid, whether it was properly paid. Is that your theory? Yes. If the issue is contested, then yes. Have you responded? Yes. If the issue is contested, then yes. I understand what your theory is, then. Okay. Your time is up, Mr. Needham. Again, are there any further questions from the Court? No? Okay. Very good. Thank you. Thank you, everybody. For your arguments in this matter have been taken under advisement. A written disposition shall issue. This time, the Clerk of the Court will escort you out of our remote courtroom, and we'll proceed to conference. Thank you very much.